## THORNTON v. TRAVELERS INSURANCE COMPANY.

1. A judgment granting a first new trial will never be reversed unless the law and the facts demanded the verdict rendered; and this is true notwithstanding the grant of a new trial may have been based upon a single ground in the motion, and though this ground may not have been well taken. But where in such a case the defendant in error brings a cross-bill of exceptions, the assignments of error therein relating to matters which will probably arise at another hearing will be decided.

2. A judge of a city court who has, under the act creating the court, "power and authority to hear and determine all civil cases of which the said court has jurisdiction," when no demand for a jury is made within a given time, may hear all such cases without a jury ; but he is not required to do so, and he may in his discretion submit any civil case to a jury, though no demand for that form of trial may have been made by either party.

3. When an accident insurance company seeks to avoid liability under a clause in a policy providing that, the "insurance shall not cover . . accident, nor injuries, nor death, nor loss of limb or sight, resulting, wholly or partly, directly or indirectly, . . from hernia," and the insured had, at the time of the injury for which indemnity is claimed, an existing hernia in his system, it is incumbent upon the company, after it has been prima facie shown that an injury to the plaintiff resulted from an accident within the meaning of the pol-

icy, to show that the existence of the hernia at that time was a substantial contributing cause which wholly or partly, directly or indirectly, brought about the injury resulting from the accident, and liability under the policy is not defeated by showing simply that the existence of the hernia rendered more serious the consequences resulting from the accident.    LUMPKIN, P. J., and LITTLE, J., dissenting.

4.  Where in a policy of insurance there is an express stipulation that " no agent has power to waive any condition of this policy," the insured by an acceptance of the policy is estopped from relying upon any agreement made with an agent, having the effect of waiving one of the conditions enumerated in the policy.

5.  In a suit brought upon a policy of accident insurance to recover an indemnity for loss of time during a period of total disability, it is error to allow an amendment setting up a claim under the policy for indemnity for a partial disability for a period of time following the period of total disability, when the amendment does not allege that proper proof of such claim was made within the time required under the policy.  A refusal on the part of the company to pay a claim for a total disability, or a denial of liability on its part for such indemnity, would not have the effect of relieving the insured from the necessity of making the proof necessary to establish his additional claim for a partial disability.

6.  Such of the assignments of error as are not referred to in the preceding notes, which relate to matters which may arise upon another trial, are dealt with in the opinion.

Argued June 27,— Decided August 7, 1902.

Action on accident-insurance policy.    Before Judge Crisp.    City court of Americus.    January 4, 1902.

*J. H. Lumpkin,* for plaintiff, cited, as to cause of injury : 87 *Ga.* 499 ; 21 L. R. A. 651 ; 30 L. R. A. 209, 210 ; 40 L. R. A. 653. Waiver of policy exception or condition : 4 L. R. A. 458 ; 12 L. R. A. 315 ; 28 L. R. A. 609 ; 97 *Ga.* 44 ; 102 *Ga.* 720.    Waiver of proof of disability, by refusal to pay : Civil Code, § 2108 ; 67 *Ga.* 11 ; 68 *Ga.* 197 ; 94 *Ga.* 785 ; 110 *Ga.* 129.    Representations in applying for policy : Civil Code, §§ 2097 – 9, 2101 ; 41 *Ga.* 338 ; 58 *Ga.* 251, 420 ; 101 *Ga.* 719 ; 80 *Ga.* 224 ; 104 *Ga.* 256.

*E. A. Hawkins,* for defendant, cited, on proof of injury and right to sue :  1 Am. & Eng. Enc. L. 323, 325, 329, 333 ; 13 L. R. A. 266 ; 32 Atl. 230.    Policy stipulations bind insured :  117 U. S. 531 (29 Law. ed. 934).    False representations of insured void policy : Civil Code, §§ 2097 – 99 ; 41 *Ga.* 338, 366 ; 53 *Ga.* 537 ; 102 *Ga.* 143 ; 106 *Ga.* 461 ; 10 L. R. A. 666 ; 44 O. St. 19.    Agent could not waive : 117 Pa. St. 460 ; 70 Wis. 1 ; 144 Mass. 43 ; 85 N. Y. 278 ; 6 Gray, 169 ; 65 Mich. 527, 8 Am. St. R. 908 ; 66 N. Y. 274 ; 33 N. J. L. 487 ; 1 L. R. A. 216 ; 84 Mich. 12 ; 136 Ind. 672.

COBB, J.   Thornton sued the insurance company, in the city court of Americus, upon a policy of accident insurance, and recovered a verdict.   The defendant filed a motion for a new trial, which was granted, the judge stating in the order sustaining the motion that a new trial was granted for the reason that, under the contract contained in the policy and the evidence produced at the trial, he did not think the plaintiff was entitled to recover, and that a new trial was granted for this reason alone.   To this judgment Thornton excepted, and the insurance company by a cross-bill of exceptions assigns error upon various rulings made during the progress of the case, and upon the refusal of the court to grant a new trial upon all of the grounds contained in the motion therefor.

1. This was the first grant of a new trial, and, as the verdict rendered was not demanded under the law and the facts of the case, an affirmance of this judgment necessarily results.   *Carter* v. *Dunson*, 113 *Ga.* 374, and cases cited.   As the effect of this affirmance is to leave the case to be tried again in the court below, it is necessary to decide such of the questions raised in the cross-bill of exceptions as relate to matters which will likely arise at the next trial. Civil Code, § 5527; *Holmes* v. *Langston*, 110 *Ga.* 862 (7).

2. The plaintiff failed to make a demand for a jury trial at the first term, but such a demand was made in writing at the next succeeding term.   The court submitted the case to a jury, over the objection of the defendant, and upon this ruling error is assigned. The 14th section of the act creating the city court of Americus is as follows: "The judge of said city court shall have power and authority to hear and determine all civil cases of which the said court has jurisdiction, and to give judgment and issue execution thereon ; *provided, always*, that either party in any case shall be entitled to a trial by jury in said court upon entering a demand therefor by himself or his attorney in writing on or before the call of the docket at the term to which the cause is returnable, in all cases where such a party is entitled to a trial by jury under the constitution and laws of this State."   Under this act the judge of the city court of Americus has authority to try without a jury all civil cases in which no demand for a jury trial is made at the first term ; but he is not required to do this, if in his discretion a jury trial is to be preferred.   *Central Railroad* v. *Gleason*, 69 *Ga.* 201(3).

3. The present suit was brought for loss of time resulting from

an injury received by Thornton while riding as a passenger upon a railway-train using steam as a motive power. The contract of insurance contained a stipulation indemnifying the insured against loss of time "resulting from bodily injuries effected during the term of this insurance through external, violent, and accidental means which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation." It also indemnified against loss of time from partial disability under certain circumstances. The policy contained a stipulation in the following language: "This insurance shall not cover . . accident, nor injuries, nor disability, nor death, nor loss of limb or sight, resulting wholly or partly, directly or indirectly, . . from hernia."

The insured was at the time of the injury, and had been for years before that time, afflicted with what is called by the medical experts who testified in the case a "reducible hernia"; and at the time of the injury this hernia was of such a character as to require the insured to wear a truss. While traveling as a passenger upon a railway-train the insured arose from his seat and walked along the aisle of the car for the purpose of obtaining a drink of water, and while thus walking in the car a sudden lurch of the train threw him violently to one side and the truss which he was wearing struck against the arm of one of the seats and the blow thus received produced what is termed by the medical experts "a strangulated hernia." It was necessary, in order to relieve this strangulated hernia, that a surgical operation should be performed, and as a consequence of the injury received by the insured he was totally disabled from work for some weeks, and after this total disability ceased he was partially disabled for an additional time consisting of several weeks. Upon this state of facts the defendant contends that it is not liable to the insured, for the reason that, while the injury was a " bodily injury" effected through external, violent, and accidental means," the loss of time did not result from this injury independently of all other causes, but was partly if not wholly, and indirectly if not directly, the result of the hernia which existed in the system of the insured at the time of the accident. On the other hand, the insured claims that he is entitled to recover, for the reason that the hernia which existed in his system at the time of the accident was not the proximate cause of the injury; that the injury would have

resulted even if he had been a perfectly sound man and altogether free from the bodily infirmity resulting from hernia.; that the company is liable to him for the reason that he was injured as the result of an accident within the meaning of the policy; and that the mere fact that his injuries might have been aggravated by the existence of the hernia at the time of the injury does not defeat his right to recover under the contract. There can be no question that the insured's injuries were the result of an accident within the meaning of the policy. The question to be determined is, whether the fact that the insured had at that time a hernia existing in his system would preclude him from recovering on the policy, when the effect of the injury resulting from the accident was to change the character of the complaint from which he was suffering from that of a reducible hernia, which seems not to be necessarily of a serious nature, to that of a strangulated hernia, which seems to be in some cases of a dangerous and in all cases of a serious nature. It seems to us that the true test to be applied, in order to determine whether there is a liability under the contract, is whether the condition of the insured in having, at the time of the accident, a reducible hernia contributed to the accident in whole or in part, directly or indirectly. If it did so contribute, the company would not be liable. But if the existence of the hernia in the system of the insured at the time of the accident did not substantially contribute wholly or partly, directly or indirectly, in bringing about the injury, but merely aggravated the consequences of the accident, then the plaintiff would be entitled to recover. If the insured had been a perfectly sound man at the date of the accident and it had resulted in producing a hernia, the company would be liable.

In *Atlanta Accident Association* v. *Alexander*, 104 *Ga.* 709, it was held that the insurer was not relieved from liability upon an accident policy by a clause therein providing that the policy should not cover " injuries or death resulting from or caused directly or indirectly, wholly or in part, by disease or bodily infirmity, hernia, . . rupture," etc., although the injury received may have produced hernia which caused the death of the insured. In that case the insured was a perfectly sound man, a blacksmith by trade, and a blow made by him with a sledge-hammer produced a strangulated hernia, from which death resulted. The ruling in that case was in substance that, under the facts, there was no injury resulting from

hernia, but a hernia resulting from an injury. This ruling is amply supported by authorities both English and American, some of which are cited in the opinion.   See also 1 Cyc. Law & Pro. 263 ; 1 Am. & Eng. Enc. Law (2d ed.), 318, n. 1 ; 3 Joyce, Ins. § 2833 ; Niblack, Accident Ins. (2d ed.) § 396 ; National Ben. Ass'n *v.* Grauman, 107 Ind. 288.   In construing a policy of life-insurance, that interpretation is to be placed upon the words of the policy which is most favorable to the insured, and all ambiguities and doubts are to be resolved in favor of a liability against the insurer. *Mass. Ben. Ass'n* v. *Robinson,* 104 *Ga.* 256 (2) ; *Warwick* v. *Knights of Damon,* 107 *Ga.* 121.   And especially is this rule of construction to be adhered to and applied in cases where the insured has prima facie established a right to recover under the terms of the policy, and the company is seeking to defeat such a liability by showing that the act complained of is within one of the exceptions reserved in the contract as a defense to an action on the policy.   All such exceptions are to be construed strictly against the company and liberally in favor of the insured.   Accident policies generally contain a clause the purpose of which is to relieve the insurer from responsibility in case of death or disability of the insured from disease.   The language of this clause is not the same in all policies, and the determination of the question whether under such a clause the company is relieved in a particular case depends upon the exact language in which the exception is couched.   The American and English Encyclopædia of Law (2d ed., vol. 1, p. 315 et seq.), in referring to clauses of this character in policies of accident insurance, says : " The tendency of the courts, under the settled rules of construction applicable to insurance contracts, is to interpret the clause in a manner favorable to the insured, and where the accident can be considered as the proximate cause of death, although disease may have been present as a secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, the policy is not avoided unless the exception plainly includes such case.   Policies excepting ' death or disability in consequence of disease,' or ' injury happening directly or indirectly in consequence of disease, or caused wholly or in part by disease,' or ' injury caused by or arising from natural disease,' have received interpretation in accord with the above principles ; yet where the death is directly due to disease and not to accident, the exception protects the insurer."

In the case of Western Commercial Travelers' Association *v.* Smith, 56 U. S. App. 393, 85 Fed. 401, 40 L. R. A. 653, Sanborn, Circuit Judge, in referring to the question as to when an accident insurance company would be liable under a contract containing clauses similar to those in the policy under consideration, says : " If the death was caused by a disease, without any bodily injury inflicted by external, violent, and accidental means, as in the case of the malignant pustule (Bacon *v.* U. S. Mut. Acc. Asso., 123 N. Y. 304, 9 L. R. A. 617), and as in the case of sunstroke (Sinclair *v.* Maritime Pass. Assur. Co., 3 El. & El. 478; Dozier *v.* Fidelity & C. Co., 46 Fed. Rep. 446, 13 L. R. A. 114), the association was free from liability by the express terms of the certificate. If the deceased suffered an accident, but at the time he sustained it he was already suffering from a disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected by the disease or infirmity, but he died because the accident aggravated the disease, or the disease aggravated the effects of the accident, as in the case of the insured who was subject to such a bodily infirmity that a short run, followed by stooping, which would not have injured a healthy man, produced apoplexy (Travelers' Ins. Co. *v.* Selden, 42 U. S. App. 253, 78 Fed. Rep. 285, 24 C. C. A. 92), the association was exempt from liability, because the death was caused partly by disease and partly by accident. If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone. Travelers' Ins. Co. *v.* Robbins, 27 U. S. App. 547, 560, 561, 65 Fed. 178, 186, 12 C. C. A. 544, 552, 27 L. R. A. 629; Union P. R. Co. *v.* Callaghan, 12 U. S. App. 541, 550, 56 Fed. Rep. 988, 994, 6 C. C. A. 205, 210; Milwaukee & St. P. R. Co. *v.* Kellogg, 94 U. S. 469, 475,

24 L. ed. 256, 259; National Masonic Acci. Asso. *v*. Shryock, 36 U. S. App. 658, 663, 73 Fed. Rep. 774, 776, 20 C. C. A. 3, 5."

In Lawrence *v*. Insurance Company, 7 Q. B. D. (L. R.) 216, the policy sued on contained the following condition: " This policy insures payment only in case of injuries accidentally occurring from material and external cause operating upon the person of the insured, where such accidental injury is the direct and sole cause of death to the insured, but it does not insure in case of death arising from fits, . . or any disease whatsoever arising before or at the time of or following such accidental injury, whether consequent upon such accidental injury or not, and whether causing such death directly or jointly with such accidental injury." It appeared that the insured while in a railway station was seized with a fit and fell forwards off the platform across the railway, when an engine and carriages which were passing went over his body and killed him. It was held that his death was caused by an accident within the meaning of the policy, and that the insurer was liable. Denman, J., said: " I think we are bound to hold that the death arose from the engine destroying the insured by coming across him, and not from the previous fact of a fit having attacked him and so brought him there." And Williams, J., said: " The true meaning of this proviso is that if the death arose from a fit, then the company are not liable, even though accidental injury contributed to the death in the sense that they were both causes, which operated jointly in causing it. That is the meaning, in my opinion, of this proviso. But it is essential to that construction that it should be made out that the fit was a cause in the sense of being the proximate and immediate cause of the death, before the company are exonerated, and it is not the less so because you can shew that another cause intervened and assisted in the causation. . . I therefore put my decision on the broad ground that, according to the true construction of this policy and this proviso, this was not an act arising from a fit, and therefore whether it contributed directly or indirectly or by any other mode to the happening of the subsequent accident seems to me wholly immaterial, and the judgment of the court ought to be in favor of the plaintiff." The language contained in the clause of the policy now under consideration is altogether different from that which was contained in the policy in the Lawrence case. It is distinctly provided in the policy now

before us that if the injury is one resulting wholly or partly, directly or indirectly, from hernia, the company is not liable. When the plaintiff shows that his loss of time resulted from a bodily injury inflicted through external, violent, and accidental means, this imposes prima facie a liability upon the company under the terms of the policy, and if it seeks to avoid liability on the ground that the plaintiff's injury was received in such a manner as to bring the case within one of the exceptions contained in the policy, the burden is upon the company to establish this defense.

It was therefore, in the present case, incumbent upon the defendant, in order to defeat liability, to show that the injury which the plaintiff had received resulted either wholly or in part, directly or indirectly, from the fact that at the time of the injury a hernia existed in his system. If the hernia that so existed did not substantially contribute to the injury which resulted from the accident, the plaintiff would be entitled to recover, notwithstanding the fact that the presence of the hernia might aggravate the consequences of the accident, and thus result in the plaintiff's disability continuing for a longer time than it would have continued but for the presence of the hernia. The fact that the plaintiff had a hernia would not alone relieve the company from liability if his injury was the result of the accident. The effect of the stipulation is simply that the company will not be responsible for injuries received as a result of an accident in which the existing hernia is either the sole or a contributing cause. That clause in the policy which excepts from the operation of the policy injuries resulting from disease, etc., properly construed, excepts an accident which is the result of disease, and not the consequences flowing from an accident which was entirely disconnected with the disease. To illustrate: If a policy-holder should have a serious and long-continued illness, such as a fever of some nature, and while recovering therefrom, and in a condition unable to resist successfully any serious shock, should receive a blow upon the head from falling plastering, from which death ultimately, though not immediately, resulted, the proximate cause of the death would be, not the fever, but the blow from the plastering, although death may not have resulted but for the debilitated condition of the injured person resulting from the fever. In such a case the immediate cause of the death was the blow on the head, though the consequences might be the result of the disease

from which he suffered.   In order to defeat a recovery under such a clause in the policy it must be shown that the disease was the substantial cause of the injury, and the mere fact that the disease may aggravate the consequences of the injury and make them more serious than they would have been otherwise does not bring the case within the exception stated in the policy.   Many other illustrations might be used, but we think this sufficient to show that, in a case like the one now under consideration, the insured will not be precluded from recovering simply because he had a hernia and while thus afflicted sustained an accidental injury which any one even in sound health would have sustained under similar circumstances, the only effect of the hernia being to aggravate the consequences resulting from the accident.  If upon another trial of the case it should be made to appear that the fact that the plaintiff had at the time of the injury a reducible hernia did not substantially contribute to the injury, he will be entitled to recover notwithstanding it might appear that the consequences resulting from the injury might have been more serious on account of the presence of the hernia than they would have been if the plaintiff had been free from this infirmity.   On the other hand, if it should be made to appear that the existence of the hernia in the system of the insured was a substantial contributing cause in bringing about the injury, and the injury was the result, either in whole or in part, directly or indirectly, from the fact that at the time it was inflicted the insured had within his system the reducible hernia, then the defendant would have made out its defense, and the plaintiff would not be entitled to recover.   We express no opinion upon the facts disclosed by the present record, as the case goes back for another trial, at which a different state of facts may be made to appear.

4. The plaintiff testified that he told the agent of the company to whom the application for the policy was made, at the time the application was made, that he had hernia, and that the agent told him that it was not necessary to state this in the application, that he did not want it in the application, that the company did not require it.   The purpose of this testimony seems to have been to establish a waiver on the part of the company of its right to insist upon that provision in the policy that it would not be liable for injuries resulting from hernia.   The policy delivered to the plaintiff

had in it a stipulation that "No agent has power to waive any condition of this policy." Even if the evidence offered was sufficient in itself to show a waiver, the agent had no authority to make this waiver in behalf of the company, and when the policy was delivered to the plaintiff with this stipulation appearing in the face thereof, he was put on notice that this waiver by the agent was not binding on the company, and he is precluded from setting up the waiver claimed to have been thus made. *Porter* v. *Home Friendly Soc.*, 114 *Ga.* 937; Cleaver *v.* Traders' Ins. Co., 65 Mich. 527, s. c. 8 Am. St. Rep. 908; Cook *v.* Ins. Co., 84 Mich. 12.

5. The petition of the plaintiff as originally filed claimed indemnity for a total disability continuing for ten weeks; it being alleged that, in accordance with the conditions of the policy, he had given to the company immediate notice in writing of the injury which he had sustained and for which he claimed indemnity. At the trial an amendment was offered, in which the plaintiff claimed additional indemnity for twenty-five weeks of partial disability, at the rate of forty dollars a week. The defendant objected to the allowance of this amendment, upon the ground that the same added a new and distinct cause of action; and also for the reason that there was no allegation in the amendment that the plaintiff had given to the defendant immediate written notice of the full particulars of the accident and injuries sued for, and furnished it affirmative proof of the duration of such partial disability within thirteen months of the time of the accident, as required by the conditions of the policy. The court overruled the objections to the amendment and allowed the same, and to this ruling the defendant excepted. The petition alleged that the insured was injured on the 17th day of April, 1900, and the amendment was allowed on the 6th day of August, 1901. The policy, copy of which was attached to the petition, contained a provision that "immediate written notice, with full particulars and full name and address of insured, is to be given said company at Hartford, Conn., of any accident and injury for which claim is made. Unless affirmative proof of death, loss of limb or sight, or duration of temporary disability, and of their being the proximate result of external, violent, and accidental means, is so furnished within thirteen months from time of such accident, all claims based thereon shall be forfeited to the company."

We think the court erred in allowing this amendment. Under

the stipulation in the policy it was incumbent upon the insured, as soon as he was injured, to give immediate notice of this fact to the company, and under the allegations of the petition this was done. A compliance, however, with this provision of the policy did not give him a right of action upon the policy. As a condition precedent to suit it was incumbent upon him, in addition to the immediate written notice provided for, to furnish to the company, within thirteen months from the date of the accident, affirmative proof of the duration of the disability, and upon his failure to do this any claim that he had against the company would be forfeited. According to the allegations of the petition, the insured did furnish, within due time, affirmative proof showing a total disability for a period of ten weeks and made claim for indemnity for such disability. The company absolutely refused to pay this claim. He did not furnish to the company, within thirteen months, proof of any other disability than a total disability for ten weeks; nor did he, prior to the bringing of the suit, make any demand or claim against the company other than that for indemnity for a total disability. It is said that the absolute refusal to pay on the part of the company relieved the insured from the necessity of making this proof. Of course, it is well settled that an absolute refusal to pay or a denial of liability dispenses with the necessity of making formal proofs of loss under a policy of insurance. *Continental Ins. Co.* v. *Wickham*, 110 *Ga.* 129 (2). We do not understand, however, that this rule applies to a case where the insured has two separate and distinct claims of indemnity and makes a demand for only one, and the refusal to pay is limited to the demand so made. It seems that the principle of the ruling made in the case cited would go no further than to relieve the insured from the necessity of making proper proofs of loss so far as the demand for indemnity made by him is concerned. The present case is an illustration of what a hardship would result if the rule were broader in its operation than that just indicated. The insured made a demand for a total disability of ten weeks, and the company had no notice whatever of any other claim or demand on his part against it under the policy. For reasons satisfactory to it it refused to pay this claim; and now it is contended that, as a result of this refusal, the insured is relieved from the necessity of making proper proofs of an entirely separate and distinct claim under the policy of which the company has never

had any notice. It had notice that the plaintiff was injured, and it had notice that the plaintiff claimed indemnity for a total disability of ten weeks, but it never had any notice that the plaintiff claimed, in addition to the total disability, a partial disability for twenty-five weeks until after a suit had been brought upon the policy to recover indemnity for the total disability and after the time for making proofs of loss under the policy had expired. We do not mean to hold that the plaintiff, by making proofs of loss for an indemnity of ten weeks at a time when he did not know whether there would or would not be a partial disability following this total disability, would be precluded from making a demand for indemnity for such partial disability. But we do hold that, even if he could make a separate demand for such partial disability, such demand must have been made within the time stipulated in the policy, that is, within thirteen months from the date of the injury, and that no suit can be brought on the policy for indemnity for such partial disability until this proof has been made.

6. The foregoing deals with all of the questions involved in the present case which it is necessary to discuss at length. There was no error in admitting evidence relating to Thornton's ability to labor prior to the injury. This evidence might have some bearing upon the question as to whether the existence of the hernia substantially contributed to the injury received by him. There was no error in excluding the letters written by the plaintiff and his counsel to the defendant. The letters of counsel clearly showed that they were written for the purpose of inaugurating negotiations for a compromise, and there was nothing in the letter of the plaintiff which was at all relevant to any issue on trial. It simply showed that the plaintiff was irritated at the refusal of the company to pay his claim and as a consequence of this irritation made a foolish and idle threat to injure the company's business in several States of the Union. The charge of the court which instructed the jury substantially that if they believed that Thornton procured the insurance by falsely representing that he was free from bodily infirmity, and such representation was material and false and he knew it was false at the time of making it, and if this fact was unknown to the company or its authorized agent, the plaintiff could not recover, was certainly not erroneous as against the company; and we are not called upon to decide whether it contained any

error as against the plaintiff.    Let the case be tried again in the light of what is contained in the foregoing opinion.

*Judgment on main bill of exceptions affirmed; cross-bill reversed. All the Justices concurring, except Lewis J., absent.*

LUMPKIN, P. J., and LITTLE, J., concurring specially.    We concur in the judgments rendered upon both bills of exceptions, and in each of the rulings announced in the headnotes except the third. From that and from the reasoning of the court in support thereof we dissent.    There can not, in our opinion, upon the facts disclosed by the record in this case, be any lawful recovery against the insurance company.